IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>GTI CAPITAL HOLDINGS, LLC, an Arizona limited liability company dba ROCKLAND MATERIALS, G.H. Goodman Investment Companies, LLC, an Arizona Limited Liability Company,<br><br>    Debtors.<br>_____<br>In Re<br><br>DAVID M. REAVES, as the Trustee of GTI CAPITAL HOLDINGS, LLC, an Arizona limited liability company dba ROCKLAND MATERIALS, G.H. Goodman Investment Companies, LLC, an Arizona Limited Liability Company,<br><br>    Plaintiffs,<br>vs.<br><br>COMERICA BANK-CALIFORNIA, as successor by merger to Imperial Bank,<br><br>    Defendant. | In Proceedings Under Chapter 7<br><br>Case Nos. 03-07923-SSC through 03-07924-SSC<br><br>Jointly Administered Cases<br><br>Adv. No. 03-00583;<br>Adv. No. 07-00031<br><br>MEMORANDUM DECISION<br>RE SETTLEMENT OF CLAIMS OF THE ESTATE WITH COMERICA BANK-CALIFORNIA<br><br>(Opinion to Post) |

1

## I. Introduction

This matter comes before the Court on a "Motion to Approve Settlement Agreement" ("Settlement Agreement") filed on February 22, 2008, by David Reaves, the duly appointed Chapter 7 Trustee, and Plaintiff in this proceeding. He seeks Court approval of a Settlement Agreement with Comerica Bank-California, the Defendant in several adversary proceedings ("Comerica"). The Settlement Agreement contemplates 1) the dismissal of the Trustee's claims in Adversary Proceeding 2:07-ap-00031; 2) the dismissal of the Trustee's Appeal in Adversary Proceeding 2:03-ap-00583; and 3) a general release of the claims between the parties. The matter was set for hearing on March 11, 2008. On March 11, 2008, the day of the hearing, an untimely Objection was filed by Triad Commercial Captive, Stirling Bridge LLC, New York Newport, and Teri and Grant Goodman ("Goodman parties").[1] After considering the testimony of the Chapter 7 Trustee and the arguments of the parties on March 11, the Court took the matter under advisement. In this Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052, Rules of Bankruptcy Procedure. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. (West 2008).

## II. Factual Discussion

On May 8, 2003, GTI Capital Holdings, LLC, an Arizona Limited Liability company dba Rockland Materials, and G.H. Goodman Investment companies, LLC, an Arizona limited liability company, filed their petitions for relief under Chapter 11 of the Bankruptcy Code.[2] On April 30, 2007, this case was converted to one under Chapter 7, and David M. Reaves

---

**1.** Mr. Goodman acted as counsel of record for the numerous entities. Teri and/or Grant Goodman may be the principal of one or more of these entities.

**2.** Because of the identical interests being presented by the Debtors and their estates in this Adversary Proceeding, and because after a sale of the Debtors' assets, the proceeds were placed into one fund to be distributed to creditors, the Court shall hereinafter refer to the Debtors as "Debtor," with their estates being referred to in the singular as well.

2

was appointed the Trustee.[3] The various parties in the case, including the Plaintiff and Defendant, have been involved in lengthy and protracted litigation over numerous issues since the inception of the bankruptcy case.

Prior to the conversion of the cases to Chapter 7, Edward M. McDonough, the Court appointed examiner, deposited the total amount of $1,310,427.18[4] with the Bankruptcy Court Registry (the "Registry Funds") on or about February 26, 2007 pursuant to an Order Regarding Funds to be Deposited in Court Registry dated February 6, 2007.[5] Pursuant to the Order, the Registry Funds were to be deposited in a segregated interest-bearing account and were to remain there until further order of the Court. Comerica initially asserted a lien against all of the Registry Funds; however, that lien has reduced over time as a result of various decisions of this Court and the Bankruptcy Appellate Panel.[6]

Also prior to the conversion of the cases, on August 31, 2006, the Debtor requested the substitution of its counsel.[7] After various hearings, the Court entered an Order on October 5, 2006, authorizing the employment of Michael Carmel, Ltd. (the "Firm") under certain terms and conditions.[8] The Order provided, amongst other things, for a one-third (1/3) contingent fee for the Firm's pursuit of various adversary proceedings. The Firm has represented the Debtor,

---

**3.** See Dkt. Entry Nos. 1457, 1461 in Administrative Case, 2:03-bk-07923-SSC (hereinafter "Administrative Case").

**4.** According to the Trustee at the March 11, 2008 hearing, the sum of approximately $620,000 from the Registry Funds was previously allocated by the Examiner to the Rolling Stock litigation. Because Comerica was not successful on its appeal to the Ninth Circuit Bankruptcy Appellate Panel concerning the issues in that litigation, said sum is now unencumbered and is not a part of this settlement. The Trustee estimated that the sum of approximately $640,000 in Registry Funds remained from the Examiner's sale of the estate assets to be distributed pursuant to this settlement.

**5.** See Dkt Entry No. Docket No. 1434 in the Administrative Case.

**6.** See note 3, supra.

**7.** See Dkt Entry. No 1363 in Administrative Case.

**8.** See Dkt Entry. No. 1388 in the Administrative Case.

3

and subsequently the Trustee, in two separate proceedings against Comerica. The first adversary proceeding, Adv. No. 03-00583, is referred to by the parties as the "DePrizio" Litigation. Both Section 547 and 548 claims under the Bankruptcy Code were initially asserted by the Debtor in the Complaint. Soon after the filing of the Complaint, the Court dismissed the Debtor's claims against Comerica under Section 547. Subsequently the Trustee took over prosecution of this action. Pursuant to a Memorandum Decision on August 2, 2007, the Court denied the Trustee's remaining Section 548 claims, and dismissed the adversary proceeding with prejudice.[9] The Trustee filed a timely notice of appeal to the Ninth Circuit Bankruptcy Appellate Panel of this dismissal. However, as a result of the dismissal of the DePrizio Litigation, Comerica asserted that it held an adjudicated lien of $638,959 on the Registry Funds.

On January 19, 2007, the Debtor commenced a second adversary proceeding, Adv. No. 07-00031, against the Defendant.[10] The Complaint sought relief under Section 510 of the Bankruptcy Code, and asserted additional claims for breach of contract and breach of the implied covenant of good faith (referred to as the "Equitable Subordination" Litigation). The Trustee also subsequently took over prosecution of this Adversary. On August 30, 2007, the Court entered a Memorandum Decision denying the Defendant's Motion to Dismiss certain counts of the Trustee's Complaint, concluding that Comerica's burden to dismiss such claims was a heavy one that had not been met. The Court also denied the Trustee's Motion for Partial Summary Judgment as to liability on the claim of equitable subordination. The Court recognized in its Decision that although the Trustee had nearly set forth a prima facie case for equitable subordination of Comerica's claim, based upon prior proceedings before this Court, the Trustee had not yet shown sufficient facts to prove the gross and egregious level of misconduct required for the Court to subordinate the Defendant's claim. The Trustee had also not alleged the damage to creditors of the estate with sufficient specificity.

---

**9.** See Dkt Entry No. 65 in Adversary 2:03-ap-00583-SSC ("DePrizio Litigation").

**10.** See Dkt. Entry No. 1 in Adversary 2:07-ap-00031-SSC.

4

Subsequently, on February 20, 2008, the Plaintiff and Defendant participated in the mediation program before the Honorable Randolph J. Haines. As a result of the mediation, the Defendant agreed to pay the Plaintiff the sum of $950,000 (the "Settlement Amount"). Comerica agreed to pay the Settlement Amount in two components: first, by fully releasing any claims it had to the Registry Funds; and second, by making a direct cash payment to the Plaintiff, from its own funds, for the balance. The Settlement Agreement also set forth mutual releases for any and all claims that either party could have been asserted in the Adversary Proceedings, including the dismissal of the appeal in the DePrizio Litigation pending before the Bankruptcy Appellate Panel. Pursuant to the Settlement Agreement, the parties also provide mutual general releases. As such, the Plaintiff will also execute a broad release of liability and stipulates to dismiss any other actions being asserted on behalf of the estate in other proceedings against Comerica.

As a part of the Motion to Approve the Settlement Agreement, the Trustee also sought the Court's approval of the attorney fees in the amount of $316,666.66, and the costs in the amount of $1,929.76, to be paid to the Firm, for its representation of the Debtor, and later the Trustee, in the DePrizio and Equitable Subordination Litigation.

The Trustee provided notice of the Motion to Approve the Settlement Agreement to all creditors and interested parties of the estates. As noted, the Goodman parties were the only ones that filed an objection to the relief requested.

### III. Legal Discussion

1. Settlement Agreement

This Court has wide discretion in granting approval of compromises between trustees and creditors. In re Sanner Contracting Co., 181 B.R. 465 (Bankr.D.Ariz.,1995). In determining whether to approve a compromise, the court must consider: (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their

5

reasonable views in the premises. In re Woodson, 839 F.2d 610, 620 (9th Cir.1988) citing In re A & C Properties, 784 F.2d 1377, cert. denied sub nom., Martin v. Robinson, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed.2d 122 (1986). The law favors compromise. In re A.C. Properties, 784 F.2d at 1381. While objections to the proposed compromise are to be considered by the court, such objections are not controlling, and the court must also weigh certain factors to determine whether the compromise is in the best interest of the bankruptcy estate. In re America West Airlines, Inc., 214 B.R. 382 (Bankr.D.Ariz.,1997).

On March 11, 2008, the day of the hearing, the Goodman parties filed the sole Objection to the Settlement Agreement. Their Objection was untimely, the bar date for objections having been March 6, 2008. The Goodman parties expressed concerns about the Settlement Agreement not being in the best interest of creditors, and accordingly not meeting the criteria set forth in Woodson. Additionally, concerns were expressed regarding the broad nature of the releases in the Agreement, specifically the language allowing for the release of third-party claims. At the conclusion of the March 11, 2008 hearing, counsel for the Goodman parties agreed that the modification to the proposed order approving the Settlement Agreement and the statements of Counsel for Comerica on the record made it clear that the claims of third parties, including the Goodman parties, were not released by the Settlement Agreement. Hence, this part of the Objection was rendered moot by the changes made at the time of the hearing. However, to ensure that the Settlement Agreement met the Woodson factors, the Court also heard arguments from counsel, and took testimony from David Reaves, the Chapter 7 Trustee and Plaintiff in this matter.[11]

With respect to the first Woodson factor, the probability of the Trustee's success on the merits in the pending litigation, the Trustee testified that during the course of the

---

**11.** The Objection of the Goodman parties is difficult to decipher, with many pleadings attached to the Objection that appear to have little relationship or bearing on whether the Settlement Agreement should be approved. As a result, before the Court took evidence at the March 11 hearing, it discussed, with Mr. Goodman, the nature of the Objection, what the Woodson factors were, and the issues that needed to be addressed.

6

mediation, he felt that the while the chances for success on the Section 548 appeal were low, and that Adversary Proceeding would most likely remain dismissed, with no possibility of a recovery on behalf of the estate, the estate had a favorable chance of recovery on the subordination and breach of contract claims. The Trustee further testified that Mr. Greg Curry had been retained by the estate to prepare a damage analysis, focusing on what costs the estate had incurred as a result of Comerica's actions. Mr. Curry estimated a damage claim of $1.4 million dollars; however, he assumed that the estate would be successful on its breach of contract claim. While the Court had previously held in the surcharge litigation, commenced by the Debtor and the Examiner against Comerica, that Comerica had breached the "term sheet" entered into by the parties after the liquidation of the estate's assets, which ultimately led to a surcharge of Comerica's collateral to pay certain administrative expense claims in part, the Trustee was aware that a trial or appellate court might not view the breach of the term sheet as rising to the level of a breach of contract claim. Therefore, taking into account the estimated $1.4 million in potential damages, and the risk at trial that the estate might not win, the Settlement Amount seemed appropriate, and in the best interest of the estate. The Trustee also testified that although the subordination certainly had merit, he believed that trying to prove the type of egregious behavior that was necessary to obtain a judgment on the merits would be difficult at best.

As to the second <u>Woodson</u> factor pertaining to the difficulty, if any, to be encountered in the matter of collection, the Trustee stated that it was not a factor. He believed that the estate would have no difficulty recovering any judgment from Comerica.

As to the complexity or difficulty of the litigation, the third factor, the Trustee testified that many of the issues did not have case law directly on point, such as whether the breach of a term sheet would be a sufficient predicate for a breach of contract claim, or were difficult to prove in this Circuit, such as the subordination of a creditor's claim to that of all creditors of an estate, particularly in light of the fact that the creditor, Comerica, had already had its collateral surcharged to pay the administrative expense creditors in part. In the Trustee's

7

analysis, many of the issues that factored into whether he would be successful in obtaining a judgment on the merits in the various Adversary Proceedings that would withstand appellate scrutiny also made the litigation complex.

The Trustee also testified that in considering the Settlement Agreement, he took into account the impact that it would have on the distribution to administrative expense creditors. Initially, the Chapter 11 administrative expense claimants were to receive approximately 65 percent to two-thirds of their allowed claims. However, as a result of the Settlement Agreement, the Chapter 7 administrative expense claims will be paid in full, and the Chapter 11 administrative claimants will now receive about 90 percent of their allowed claims. The Court is cognizant that in dealing with this insolvent estate, any potential recovery the Trustee would have obtained in pursuing the litigation would have resulted in a *de minimus* return to unsecured creditors, if any.[12] Moreover, of the administrative creditors to be paid as a result of the Settlement Agreement, not one objected. Thus, as to the final factor, the Trustee had shown that giving due deference to the opinion of creditors, those that would be impacted the most by the settlement did not object.[13]

The Woodson factors essentially focus on the business judgment of the trustee, and whether the settlement is in best interest of creditors. Based on the testimony of the Trustee, the Court finds that the Trustee did weigh the costs and risks involved in litigating the claims at issue with the potential increased distribution to creditors. The Debtor, and now the Trustee, has engaged in contested litigation with Comerica that has occurred over a number of years and has been time-consuming and expensive. Therefore, the Trustee's resolution of all claims that exist between the estate and Comerica has a tangible benefit to this estate that cannot be overlooked.

---

**12.** Of course, the Goodman parties, if their claims were fully allowed, would be in the class of unsecured claimants of this estate.

**13.** The Trustee testified that after the mediation and the presentation of the Settlement Agreement to the Court, he received positive comments from the administrative expense claimants or their counsel.

8

The Court concludes, as a matter of fact and law, that the Settlement Agreement reached between the Trustee and Comerica, resolving the disputed claims herein and as a general release between the parties, meets the Woodson factors, is both fair and equitable, and is in the best interests of the estate. The Objection of the Goodman parties, to the extent that there is still a remaining objection, is overruled.

2. Attorney Fees

In conjunction with the Settlement Agreement, the Trustee also seeks approval of the attorneys' fees and costs for the Firm in the total amount of $318,596.42. Pursuant to an Order Appointing Counsel, entered by the Court October 5, 2006, the Firm is entitled to receive a one-third (1/3) contingent fee for the Firm's pursuit of the adversary proceedings. The Goodman parties expressed concerns regarding the fee structure and potential ethical violations thereof. The Local Rules of this Court incorporate the Rules of the Supreme Court of the State of Arizona. *See* Local Rule 9011-1. After the March 11, 2008 hearing, Mr. Carmel, on behalf of the Firm, filed an affidavit, setting forth the time that he expended on the Adversary Proceedings and the costs incurred. The Trustee independently reviewed the Affidavit and believes that Mr. Carmel probably underestimated the time expended by the Firm on the various Adversaries. The Trustee did testify at the time of the March 11, 2008 hearing that he thought the Adversary Proceedings were complex and difficult to litigate, that the Firm had achieved an excellent result, that the Debtor had attempted to retain other counsel to pursue these Adversaries and that the Firm was the only one willing to do so given the substantial risk of non-payment of attorneys' fees and costs, and that the attorneys' fees and costs requested by the Firm were reasonable. Given the Trustee's testimony and the affidavit submitted by the Firm, the Court concludes that the Firm has met the requirements of the Local Rules and the Bankruptcy Code and Rules to receive a contingent fee and costs in this bankruptcy proceeding.

Moreover, the ability of this Court to revisit the contingent fee requested by the Firm is limited by Ninth Circuit case law. When the bankruptcy court pre-approves certain terms

for compensation, "the court cannot alter those terms unless it finds the original terms 'to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.'" In re Reimers, 972 F.2d 1127, 1128 (9th Cir. 1992). In this case, there is nothing in the record to reflect that the Court should deviate from the pre-approved contingency fee agreement. Moreover, the Court also had the Firm submit an Affidavit regarding the time expended and the costs incurred with respect to the Adversary Proceedings.[14] The Court has reviewed the Affidavit, and after considering the testimony of the Trustee, concludes that the attorneys' fees and costs requested by the Firm are reasonable. The Firm undertook the representation of this estate at great risk. The Firm risked not receiving any compensation for its services depending on the final adjudication of these matters. Accordingly, the Court concludes that the Firm is entitled to attorneys' fees and costs. To the extent that the Goodman parties interposed an objection to the Firm's request for compensation for these Adversary Proceedings as a part of the Settlement Agreement, that objection is also overruled.

### IV. Conclusion

Based upon the foregoing, the Court concludes that the Motion to Approve the Settlement is GRANTED, with the modification of the release language as noted on the record, and that the attorneys' fees and costs requested by the Firm are approved.

DATED this 17th day of March, 2008.

*[signature]*

Honorable Sarah Sharer Curley
U. S. Bankruptcy Judge

BNC to notice.

---

**14.** See Dkt. Entry No. 47 in Adversary 2:07-ap-00031-SSC.